WILLETT L. IRISH, APPELLANT, v. JOHN F. O'HAN-
LON ET AL., APPELLEES.

[FILED JUNE 11, 1892.]

Mechanics' Liens: FORECLOSURE. One A. being owner of four lots in a body in the city of O., in February, 1889, placed them in the hands of F., a real estate agent, for sale at $600 each, one-fourth cash, one of the conditions being that the purchaser should erect a house upon the lot purchased. F., on February 14, 1889, sold a lot to O'H. for $600, one-fourth to be paid as soon as a loan thereon could be effected. O'H., with the assent of the agent, thereupon entered into possession and commenced the erection of a story-and-a-half house. In March of that year A. was advised of the sale and wrote a letter to O'H., urging him to complete the contract as soon as possible. This letter was sent through the mail and returned to the writer. A. waited through March, April, May, and to June 10 of that year before calling upon O'H. The house was then nearly completed. O'H. then informed A. that by reason of a misunderstanding with the material-men and others he did not know as he could use the lot. A. thereupon took possession of the house, finishing the same, erecting fences, outhouses, etc., at an expense of $100. In an action to foreclose mechanics' liens on the house, held, that A., within thirty days, may elect to pay the amount due on such liens, but in case of his neglect or refusal to do so, a referee will be appointed to ascertain the amount

thereof, together with the rental value of the premises, less in-
surance and taxes paid, and report the same to the court, and
upon the confirmation of the report the premises will be or-
dered sold, and out of the proceeds A. will be paid $700, less
the rental value of the premises, with interest, and out of the
remainder the lien-holders shall be paid *pro rata* the amount of
their respective claims, the balance, if any, to be paid to O'H.

APPEAL from the district court for Douglas county.
Heard below before WAKELEY, J.

*Winfield S. Strawn*, for appellant, cited: *Webster v.
Wray*, 17 Neb., 579; *Lorton v. Russell*, 27 Id., 372;
*Levy v. Bank*, Id., 557; *Irish v. Lundin*, 28 Id., 84;
*Millsap v. Ball*, 30 Id., 728.

*Isaac Adams*, contra, cited: *Nichols v. Williams*, 22 N.
J. Eq., 63; *Riley v. Farnsworth*, 116 Mass., 223; *Schmel-
ing v. Kriese*, 45 Wis., 325; *Stadleman v. Fitzgerald*, 14
Neb., 290; *Bissell v. Terry*, 69 Ill., 190; *Bosseau v.
O'Brien*, 4 Bis. [U. S.], 395.

MAXWELL, CH. J.

In February, 1889, Isaac Adams was possessed of lot
13, in block 7, Central Park addition to the city of Omaha.
He seems to have been the owner of four lots in a body,
including the one in question, in that addition, and seems
to have been anxious to sell one or more of them to parties·
who would erect buildings thereon. He placed the lots
for sale with one French, a real estate agent, who on the
14th of February, 1889, sold the lot described above to
John F. O'Hanlon for the sum of $600, of which $150
was to be paid when a loan could be effected on the prop-
erty, and the balance was to be secured by a second mort-
gage on the property, it being agreed that Mr. O'Hanlon
might execute a first mortgage thereon to procure funds to
pay for the building, etc., which he was about to erect.
The details of the amount of this first mortgage do not

appear to have been entered into, nor the length of time the second mortgage should run, nor was the rate of interest mentioned. Nevertheless, Mr. French sold the lot in question to Mr. O'Hanlon and put him in possession, and O'Hanlon thereupon commenced the erection of a story-and-a-half house on the lot, and the plaintiff furnished the material for the erection of the same, and Frederick Lindhorst, Kier & Bendorf, Abram S. Joseph, and Milton S. Roys also claim a lien for services and material for the erection of said house. From some cause, which does not clearly appear, O'Hanlon was unable to effect a loan on the property, and Mr. Adams was very anxious to obtain the first payment, and visited him on the lot in question and claims to have been very much surprised to find a dwelling erected on said lot and nearly finished.

Mr. Adams testifies that Mr. French informed him of the sale to Mr. O'Hanlon in March, 1889; that about a month afterward, he told Mr. French " in order to hurry the matter up I would write him (O'Hanlon) a letter which he could show O'Hanlon, urging O'Hanlon to close the deal." The letter was sent through the postoffice, but was returned to the writer. About the 10th of June, 1889, Mr. Adams went to the lot in question to find Mr. O'Hanlon. He found the gentleman in question and he informed him that through a misunderstanding with the party who had furnished the material for the house he had got into difficulty and did not know whether he could do anything with the lot or not. Mr. Adams thereupon took possession of the house. It was nearly completed, although Mr. Adams claims to have paid $100 to finish the house and build a fence around the lot, building outhouses, etc.

On the trial of the cause the court found the issues in favor of Adams and dismissed the case. The action was brought to recover a judgment against O'Hanlon and to foreclose mechanics' liens on his interest in the property. The parties were entitled at least to judgment against

O'Hanlon for the amount due them.  They were also entitled to mechanics' liens upon the interest of O'Hanlon in the property.

It appears from Mr. Adams's own testimony that he placed this property in the hands of Mr. French for sale at $600, and promised him $30 to effect a sale at that price. He does not seem to have been very particular about the terms of payment of the residue, so that he was paid one-fourth in cash.  In March of that year he was advised that a sale had been made.  He raised no objections, but practically affirmed the sale by writing a letter to Mr. O'Hanlon, urging him to complete the purchase apparently by making the first payment.

There is testimony in the record tending to show that the loan could not be obtained until the house was erected. Mr. Adams waited through March, April, May, and to the 10th of June, 1889, before calling upon Mr. O'Hanlon or visiting the lot, and even then, so far as we can see, it was for the purpose of receiving or making arrangements to receive the first payment.  He had been apprised some time before that Mr. O'Hanlon was building on the lot, and this necessarily would be attended with the liability to mechanics' liens.  We do not care to comment on the testimony at length.

Mr. O'Hanlon was not a wrong-doer in a legal sense. He was lawfully in possession, and the material-men and others could acquire a valid lien on the building at least. The judgment of the district court is reversed, and Mr. Adams will have leave within thirty days to elect to pay the mechanics' liens set forth in the pleadings.  In case of his neglect or refusal to do so within the time stated, the cause will be referred to ——— to take testimony and state an account as to the rents of said dwelling house, less the insurance and taxes, and report the same to this court, and upon the confirmation of such report the property will be ordered sold, and out of the proceeds thereof will be

paid, first, the sum of $700, less the rents as aforesaid, with lawful interest thereon; second, the remainder of said proceeds to be applied *pro rata* among the several lien-holders; the balance, if any, to be paid to Mr. O'Hanlon.*

JUDGMENT ACCORDINGLY.

THE other judges concur.

---

* Modified July 1, 1892, so as to give Isaac Adams preference for $150 and interest; $450 and interest to be subject to liens of mechanics' lien-holders; $100 to prorate with mechanics' liens.